UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| *PERFICIENT, INC.* )<br>)<br>            Plaintiff, )<br>)<br>v. )<br>)<br>*DAVID PALFERY* )<br>)<br>            Defendant. )<br>) | Cause No. 4:20-cv-00618-MTS |

### PLAINTIFF'S TRIAL BRIEF

COMES NOW Plaintiff Perficient, Inc. ("Perficient"), by and through its attorneys Sandberg Phoenix & von Gontard P.C., pursuant to this Court's Order dated October 8, 2021 [Doc. 38], and for its Trial Brief, states as follows:

### INTRODUCTION

This matter concerns the breach of restrictive covenants contained in a series of five agreements between Perficient and Defendant David Palfery during his employment by Perficient, titled Restricted Stock Award and Non-Competition Agreement ("Non-Competition Agreement"). The breaches result from Palfery's failure to disclose his subsequent employment by 3Cloud, LLC ("3Cloud") and the competitive duties Palfery is performing on its behalf.

The evidence to be adduced at trial will show that Palfery, a highly compensated and experienced technology consultant, accepted multiple stock awards from Perficient valued in excess of $140,000 at the time of vesting and now worth over $800,000, in exchange for his agreements to the Non-Competition Agreement, which included contractual promises to disclose his other subsequent employment within seven days and not to compete against Perficient, among other contractual promises. The evidence will further show Palfery accepted his position

15995819.v1

with 3Cloud and signed an employment agreement with it in September of 2019, but failed to disclose that fact until November 2019. Palfery kept his new job a secret in order to receive a vesting of three additional awards of Perficient stock, totaling 1,476 shares worth over $56,000 at the time of vesting. Palfery finally submitted his notice on the same day as his last vested award. He then left to perform competitive consulting duties at 3Cloud. This failure to report subsequent employment and performance of competitive duties breached the restrictive covenants described in the Non-Competition Agreements. Palfery's employment by 3Cloud while retaining the benefit of the Perficient stock awarded to him as consideration for his agreement not to compete also unjustly enriches Palfery at Perficient's expense.

Palfery posits a handful of defenses to his clear breaches of the Non-Competition Agreement, including that his acceptance of the stock awards was insufficient to accept the contract and that some of his duties are not competitive to his former job duties. Each of these defenses fail, as set forth below. This assertion is further belied by the fact that this Court has repeatedly enforced this identical contract against numerous former Perficient employees in recent years. See. e.g. *Perficient v. Munley*, 4:19-cv-1565-MTS, 2021 WL 1427797 (E.D. Mo. Apr. 15, 2021) (entering temporary restraining [Doc. 26] followed by permanent injunction order against former employee [Doc. 59], and ultimately awarding Perficient summary judgment on its breach of contract claims [Doc. 112]); *Perficient v. Gupta*, 4:21-cv-759-HEA (E.D. Mo. July 6, 2021) (entering temporary restraining order [Doc. 6] and consent permanent injunction against former employee [Doc. 21]); and *Perficient v. Livingston*, 4:21-cv-00404-SRC (entering consent permanent injunction against former employee [Doc. 40]).

## ARGUMENT

**A. Palfery's breach of his agreement to disclose subsequent employment.**

15995819.v1

The evidence to be adduced at trial will demonstrate Palfery breached the Non-Competition Agreement. Paragraph 15(g) of the Non-Competition Agreement required Palfery to disclose any new employment to Perficient. Specifically, the provision provides:

> (g)  For a period of twenty-four (24) months immediately following the termination of Employee's employment, Employee promises to disclose (within seven calendar days) to the Corporation in writing any employment, consulting, or other service relationship Employee enters into after the termination of Employee's Service.

Palfery breached this provision while still employed by Perficient in order to obtain three additional awards of restricted Perficient stock. 3Cloud extended a job offer to Palfery on September 24, 2019, which Palfery accepted the very next day, September 25, 2019. However, Palfery failed to report his new employment until November 4, 2019, forty days later.

This Court addressed this provision in *Munley* determined the seven-day requirement is an enforceable covenant and failure to disclose new employment results in breach of this identical contract. *Munley*, 2021 WL 1427797, at *10 (E.D. Mo. Apr. 15, 2021) ("this Court finds that Munley breached § 15(g) of the Non-Competition Agreement by failing to notify Perficient of his employment at Spaulding in writing within seven days"). In fact, the circumstances are even more severe here, because Perficient suffered actual damages as a result of Palfery's breach. Because Perficient had no notice that Palfery had already been hired by a competitor and Palfery had executed an employment agreement to begin his work there, it awarded him an additional 1,476 shares, then worth over $56,000. Palfery had no vested right to receive those shares unless he remained employed by Perficient.

Palfery's assertions that he did not breach this provision because he accepted the job forty days *before* his resignation create a legal absurdity. Palfery claims he can get around this requirement by accepting competitive employment and failing to disclose it prior to resigning –

3

15995819.v1

when *he is the one controlling the timing of his resignation*. Palfery should not be permitted to manipulate his resignation date, as he did here, to avoid this provision while simultaneous enriching himself in the process. As with all contracts under Missouri law, Palfery has duty good faith and fair dealing. *Bishop v. Shelter Mut. Ins. Co.*, 129 S.W.3d 500, 505 (Mo. App. S.D. 2004). Furthermore, the Non-Competition Agreement's notice provision (paragraph 25) requires all notices under the agreement to be "in writing and personally delivered or sent by mail" to Perficient care of its Chief Financial Officer at its St. Louis office. Palfery never provided the notice required by this term, before or after his resignation, and in fact has not met this requirement to this day.

Finally, as is clear by his attempts to skirt this requirement, there can be no doubt Palfery was unjustly enriched by his actions. He misled the company, failed to report his new job until November 4, forty days after accepting it, and enriched himself at Perficient's expense. He also performed work on important new marketing efforts for Perficient's new software offerings, working in direct communication with Microsoft, a central partner of both Perficient and 3Clould. He then took that knowledge, experience, and relationships to 3Cloud at Perficient's expense, while retaining the benefit of his additional stock awards.

**B. Palfery's breach of his covenant not to perform competitive duties.**

Palfery also breached his contractual covenant not to perform competitive duties by accepting and working for 3Cloud on Azure-related software consulting and implementation services.

   *1. Palfery's job duties at 3Cloud are competitive.*

Palfery agreed in the Non-Competition Agreement not to engage in a competing business with Perficient, or to perform competing duties, for a period of twenty-four months following

4

15995819.v1

termination not to perform any Competitive Duties (as an employee, consultant or otherwise) anywhere within the Restricted Area for any Competing Business[.] "Competing Business" is defined to include: "any person or entity that offers, markets, provides or is demonstrably planning to offer, market or provide any Competitive Products or Services." "Competitive Duties" are defined to include duties which are "substantially similar to the duties the Employee performed or hereafter performed for the Corporation or its Subsidiaries; and/or involve the sale or marketing of any "Competitive Products or Services," which include "any products or services that are of a type or nature that are an alternative to, the same, as similar to any of the products or services being offered, sold, provided, marketed, *or actively developed*" by Perficient as of Palfery's resignation (emphasis added).

There is no dispute that Perficient and 3Cloud offer similar services within the software consulting industry. They are each software integration firms and have partnership relationships with business software vendors, here Microsoft, to implement the vendor's software for the end user/customer, because the software itself cannot be used out of the box without being implemented. The software product at issue here is Microsoft's Azure, which serves as Microsoft's cloud platform. By using Azure, business users can store data in the cloud and operate applications specific to their business from cloud-based locations rather than using on-site servers. Both Perficient and 3Cloud offer software consulting services to implement Azure for their business customers, migrate data and applications to the cloud, and other services to better utilize the Azure platform.

While employed by Perficient, Palfery performed Azure-related consulting services, both in his personal capacity and as a supervisor and team leader for other Perficient technical employees. His experience at Perficient began with Microsoft Sharepoint which migrated to the

15995819.v1

Azure Cloud as Sharepoint Online, and he went on to lead a number of other Azure projects for major Perficient customers. The evidence will further show that Palfery's duties at 3Cloud are competitive. He again has the responsibility to implement Azure software solutions for 3Cloud clients and all of his work duties are within the Azure ecosystem.

> 2. *Palfery's work for 3Cloud on ARO breaches the competing duties covenant because he worked to develop that offering and its marketing for Perficient.*

At the end of his employment by Perficient, Palfery's work also included developing a marketing presentation and working demonstration of a new software offering and collaboration between Perficient and its partners Microsoft and Red Hat called Azure Red Hat Openshift ("ARO"). Microsoft launched ARO in spring of 2019. Based on its existing partnerships with Microsoft and Red Hat, Perficient was in a unique position to corner the market on ARO implementations. Perficient tapped Palfery to create a working demonstration of the ARO product, working in direct conjunction with Microsoft and Red Hat to use for marketing of the ARO product and Perficient's services in relation to its rollout. The evidence will show Palfery performed this work, leveraging Perficient's partnership capital with Microsoft, while he was already actively under contract with 3Cloud to perform competitive Azure consulting and implementation services.

Since he has joined 3Cloud, Palfery has continued to compete against Perficient by performing Azure-related software implementation services. What's more, Palfery will testify that he has already performed at least one implementation project involving ARO, the new offering he worked on while at Perficient (though secretly under contract with 3Cloud). He has also interfaced directly with at least one Microsoft employee who was involved with the ARO project at Perficient, and 3Clould intends to continue to assign him to ARO-related projects that may arise in the future.

6

15995819.v1

> 3. *Palfery's competitive duties create risk to Perficient information based on Palfery's broad access to Perficient's confidential information.*

Palfery's job responsibilities required him to have access to and consider a wide scope of Perficient strategic and confidential information. In addition to his actual hands-on implementation work and his supervision of other Perficient technical personnel in the performance of their duties, Palfery's responsibilities at Perficient extended to direct relationship-building and sales work with Perficient's clients. Palfery served as a subject matter expert and was responsible for personally interfacing with Perficient's customers by meeting with the end-user customer for sales support and to gather business and technical requirements for projects. Palfery could use this information regarding the way Perficient pitches and performs its services to assist 3Cloud in pitching business for a future project at a price point Perficient's margin guidelines would not allow, or which would not meet the profitability strategy Perficient set for that specific business group, or propose to include certain non-standard contract terms Palfery knows that Perficient would not accept, or would price differently.

Based on all of these factors, specifically the risk associated with Palfery's exposure to and use of Perficient's confidential information, Perficient provided Palfery with substantial and additional consideration for his covenant not to compete in the form of its awards of restricted stock. By his performance of competitive duties, Palfery has breached his contractual covenants, exposed Perficient to significant harm from unfair competition, all while retaining the benefit of the consideration for his contractual promises. While Perficient had grounds to injunctive relief against Palfery, Perficient is not and has not taken action to prevent Palfery from working. It merely seeks return of its consideration as damage. Put simply, because Palfery's competitive employment puts Perficient's confidential information at risk, Perficient did not receive the benefit of its bargain.

15995819.v1

*4. Palfery's attempts to distinguish his new job duties are legally immaterial.*

In assessing whether products and services are competitive, this Court has held it must focus on the customer base for whom the companies compete, not whether the products or services they offer are competitive. *See, Panera, LLC v. Nettles*, No. 16-CV-1181-JAR, 2016 WL 414114 (E.D. Mo. Aug. 3, 2016). (comparing pizza to sandwiches and salads to compete for "clean ingredient" customers). This reasoning applies to Perficient and 3Cloud; they offer overlapping Azure services and Palfery was involved with both practices in the same capacity. This Court has already applied the holding in *Panera* multiple times to determine the non-competition covenant in Perficient's Non-Competition Agreement is enforceable, and that an employee's work for a competitor to provide services to clients with the same client need results in a breach of that covenant. *Munley*, 2021 WL 1427797, at *9; *Gupta*, 4:21-cv-759-HEA (E.D. Mo. July 6, 2021).

Palfery contends his responsibilities do not compete with Perficient, based on razor-thin and legally immaterial distinctions. First, Palfery asserts his work at Perficient was largely related to SharePoint, but his own testimony establishes that SharePoint Online operates in the Azure ecosystem. He also admits that he shared a "dotted line" reporting relationship to the Azure team leadership at Perficient and had the responsibility to lead a number of Azure projects before he left. Finally, the ARO marketing demonstration was directly related to a new Perficient Azure offering and he had a central role in Perficient's marketing efforts for that offering. This Court made this rule clear in *Munley*: "While at Perficient, Munley spearheaded an effort to prioritize development of a CPQ product line. This effort included potential acquisitions of players in the CPQ space, re-assignment of key personnel to focus on CPQ, and a presentation to senior Perficient leadership identifying CPQ as an area of development." *Munley*, 2021 WL

15995819.v1

1427797, at *9. Based on those acts Palfery took to assist in the development of the new Perficient offering, his work at 3Cloud results in a breach of his covenants.

Palfery also purports to distinguish between his responsibilities at the two jobs – whereas his role at Perficient involved supervision and project leadership, his role at 3Cloud is purportedly more hands on and less supervisory. This distinction is legally immaterial under Missouri and Eighth Circuit case law addressing this issue. In fact, prior decisions by this Court demonstrate an employee's leadership role and access to strategic decision making creates an even greater risk of harm to the former employer where the employee leaves to join a competitor. *Express Scripts, Inc. v. Lavin*, 2017 WL 2903205, No. 17-cv-01423 (E.D. Mo., July 7, 2017) (employee in leadership position with "oversight and management" within existing client business and knowledge of "business strategies moving forward" created risk of harm to former employer). Palfery's supervisory responsibilities with Perficient do not distinguish his job duties at 3Cloud, they only further the harm suffered by Perficient as a result of the breach. In a position of leadership, Palfery had higher-level access to Perficient's confidential information and business strategies moving forward, its employees' capabilities, its pricing and business development strategies, and more. Perficient paid Palfery substantial consideration to protect that information and those strategies. It did not receive the benefit of its bargain.

**C. Palfery agreed to the Non-Competition Agreements by his acceptance of Perficient's consideration – the restricted stock awards.**

Palfery's primary defense has been and will be that he should not be bound by the terms of his Non-Competition Agreement, despite the fact he admits he accepted all of the stock awards granted to him by Perficient, valued at hundreds of thousands of dollars at the time of vesting and substantially more now. This assertion fails. The contracts provide for their

9

acceptance by his acceptance of the stock awards, and Perficient will offer competent testimony that Palfery could not have accepted the awards without opening and viewing the contracts.

For his part, Palfery makes two claims as to why he should be able to accept the consideration but not be bound by the agreement: (1) Palfery asserts the agreement is not binding because it was not physically signed, and (2) Palfery claims that he attempted to open the Non-Competition Agreement at the time of his first stock award in 2014, but was unable to do so, receiving an error message. He claims this was because he was not logged into the Perficient Virtual Private Network ("VPN"). Both assertions fail.

> 1. *Palfery is bound by the terms of the Non-Competition Agreement because it provides for its acceptance by his acceptance of the stock awards, and Missouri and Eighth Circuit law enforce "clickwrap" agreements.*

The Non-Competition Agreement provides for its acceptance by acceptance of the stock awards. The last page provides: "By your electronic acceptance of this Restricted Stock Award you agree to the terms and conditions outlined in the Restricted Stock Award Agreement and the 2012 Long Term Incentive Plan." Palfery has admitted to his acceptance of the stock awards, and the evidence adduced at trial will demonstrate it was impossible for Palfery to accept the award without viewing and accepting the terms of the agreement through the website of Perficient's vendor E*Trade. His arguments about signature are unavailing.

Importantly, this this Court need look no further than this very same agreement, which has recently and repeatedly enforced in favor of Perficient as to other former employees. *See Munley*, *Gupta*, and *Livingston*. In each of those cases, the departing employee accepted the very same contract at issue here, which also contained the identical language for the contract's acceptance by receipt of the stock award. This Court should not depart from his prior repeated enforcement the identical contract under identical acceptances.

10

15995819.v1

This Court, as well as other courts in the Eighth Circuit applying Missouri law, have repeatedly enforced a party's contractual agreement to be bound under identical circumstances. *See Burcham v. Expedia, Inc.,* No. 4:07CV1963-CDP, 2009 WL 586513 (E.D. Mo. Mar. 6, 2009)*; Karzon v. AT&T, Inc.,* No. 4:13-CV-2202-CEJ, 2014 WL 51331 (E.D. Mo. Jan. 7, 2014)*; Franklin v. Cracker Barrel Old Country Store,* No. 4:17 CV 00289 JMB, 2017 WL 7691757 (E.D. Mo. Apr. 12, 2017)*; Vest v. Cracker Barrel Old Country Store,* 371 F. Supp. 3d 593 (W.D. Mo. 2018). The Non-Competition Agreement is a form of "clickwrap" agreement, whereby assent is manifested expressly, usually by clicking a box or button (e.g. "I agree"). *Major v. McCallister*, 302 S.W.3d 227, 229 (Mo. App. S.D. 2009) "Courts routinely enforce clickwraps." *Id*. (citing *U.S. v. Drew,* 259 F.R.D. 449, 462 n. 22 (C.D.Cal.2009)). The user's clicking of the box operates as affirmative assent to the terms. *Burcham*, 2009 WL 586513 at *2. A contracting employee's inability to physically or electronically sign a document "does not disclaim contract formation." *Vest v. Cracker Barrel Old Country Store,* 371 F. Supp. 3d at 599. (citing; *Franklin*, 2017 WL 7691757, at *4).

This Court set forth its analysis for the enforcement of clickwrap agreements in *Burcham*. There, the user of the website had to click a button reading "continue" and the text on the "continue" page read "By continuing on you agree to the following terms and conditions." *Burcham*, 2009 WL 586513. at *1. Like Palfery, the user claimed he had no recollection of ever viewing the user agreement. *Id*. at *2. This Court determined the user was bound by the agreement, because Expedia used an enforceable online clickwrap agreement that required the user to specifically assent to the terms of use before proceeding further. *3. Although the user denied "he ever saw or read the terms," that was "not a sufficient reason to invalidate the

11

contract." *Id*.  "That [the user] either didn't read the agreement or didn't see it may be unfortunate for him, but it does not change the outcome." *Id*.

This reasoning applies with equal force to employment documents, and this Court has gone on to apply the reasoning in *Burcham* to a number of employer-employee contracts, again reaching the result that the employee is bound. See, e.g. *Franklin*, 2017 WL 7691757, at *1 (E.D. Mo. Apr. 12, 2017), ("[employee's] testimony that she did not recall reviewing or agreeing to the Arbitration Agreement is not sufficient to refute the CBU system record that she had done so." *Id*.; *See also Vest v. Cracker Barrel Old Country Store, Inc.*, 371 F. Supp. 3d 593, 596–97 (W.D. Mo. 2018) (similarly holding).

The circumstances are substantially similar here.  Perficient's documents establish the contract was to be agreed to by acceptance of the stock award.  Even if this Court accepts his self-serving testimony that he somehow could not view the 2014 Non-Competition Agreement, Palfery does not dispute he visited the website, was presented with a link to the agreement, and accepted the stock award (he claims) without reading it.  Although he asserts he received an error message – a claim Perficient disputes – he admits that did not attempt to log in with his VPN credentials to read the agreement and he did request a copy of the agreement from anyone at Perficient.  Therefore, Palfery's self-serving and speculative testimony (to the extent this Court should accept it) is defeated.  Palfery had ready access to the Perficient VPN, but elected not to use it to read the agreement.  Therefore, while Palfery's testimony about his supposed inability to access the Non-Competition Agreement at the time of stock acceptance in 2014 is dubious, it is also immaterial.  "Under Missouri law, 'a person who has an opportunity to read a document but signs it without doing so is held to have knowledge of the document's contents, absent a showing of fraud.' " *Vest*, 371 F. Supp. 3d at 599 (quoting *Midwest Printing, Inc. v. AM Int'l, Inc.*, 108

12

F.3d 168, 170 (8th Cir. 1997)). Even a showing that an employee spent zero hours and zero minutes in a module containing an agreement is "not legally significant given that she was afforded the opportunity to review the arbitration agreement before marking it complete." *Id*. Here, Palfery is held to have knowledge of the Non-Competition Agreement's contents because he was given the opportunity to review the agreement, and he cannot defeat that presumption absent a showing of fraud, a claim he has not made.

Palfery elects to hang his hat on a single unreported case from the Western District of Missouri, *Ramsey v. H&R Block Inc.*, No.18-CV-00933-ODS, 2019 WL 2090691 that is distinguishable on its facts. In that case, the employer sought to rely on an online employment application including a mutual arbitration agreement, and asserted the applicant electronically signed it. *Id*. at *3. This assertion was based solely on the fact the applicant clicked the "save and continue" button on her application. *Id*. The creation of a new account on the employer's website required the applicant to enter personal information, including email address, password, his or her full name, address, and telephone number as well as to consent to a background check, including date of birth and social security number. *Id*. at *4. However, the employer was not able to present *any* documentation regarding the applicant, including her employment application and the required date, "or any electronic record establishing Plaintiff actually applied for the position and agreed to arbitrate her claims." *Id*. Without some evidence the applicant even completed the electronic application process, the Court found the employer did not carry its burden to show she agreed to the arbitration agreement. *Id*.

The circumstances here are wholly contrary. The evidence Palfery accepted the agreement is the acceptance of the stock itself. Perficient has produced records demonstrating the issuance of the stock. There is no dispute Palfery received it. He admits he went to the

13

15995819.v1

E*Trade site, saw the agreement, and accepted the stock award without reading the agreement. *Ramsey* addresses a problem of evidence. Here, there is no dispute Palfery went through the process to accept the stock award, he admits as much. The dispute relates rather to the legal effect of his actions. *Ramsey* has no application here.

> 2. *Palfery is bound by the terms of the Non-Competition Agreement under the standard contract doctrine.*

Palfery is further bound by the terms of the Non-Competition Agreement because he accepted the stock award and had notice there was a document governing its terms. Missouri recognizes this "standard contract doctrine." *Major*, 302 S.W.3d at 231. "When one party accepts the other party's performance, it gives validity to an agreement even if unsigned, and imposes on the accepting party the obligations thereunder." *Id*. (quoting; *R.L. Hulett & Co. v. Barth,* 884 S.W.2d 309, 310 (Mo. App. E.D. 1994)). Here, Palfery had constructive notice of the terms of the agreement. He knew there was an agreement hyperlinked from the page from which he accepted the stock. This Court, applying Missouri law, charges a contracting party with constructive notice of the terms of a linked agreement under these circumstances. *See, e.g.*, *Margulis v. HomeAdvisor, Inc.*, No. 4:19-CV-00226-SRC, 2020 WL 4673783, at *2 (E.D. Mo. Aug. 12, 2020) (finding a website user has constructive notice of website terms where hyperlink to the Terms and Conditions was conspicuously displayed beneath the "View Matching Pros" button in blue font."). The existence of a conspicuous link to terms results in constructive notice. *Id*.

Palfery is bound by the terms of the standard contract doctrine here. Even if the Non-Competition Agreement is "unsigned" as Palfery will assert, he remains bound by the "obligations thereunder" because he accepted Perficient's performance under the agreement.

14

> 3. *Additionally, and in the alternative, Palfery is bound by the subsequent contract years (2015, 2016, 2017, and 2018), because he made no effort to read the Non-Competition Agreement and accepted anyway.*

Finally, even assuming *arguendo* this Court accepts Palfery's assertion he could not view the 2014 Non-Competition Agreement, that fact does not affect the enforceability of each other contract year, because Palfery admitted he made no effort to review the agreement those years and accepted the award anyway.  The only time Palfery encountered this supposed error was 2014, but that was only the first of five Non-Competition Agreements, each subject to separate consideration and a separate contractual acceptance process.  Palfery made no effort to read the Non-Competition Agreement's terms during the 2015, 2016, 2017, or 2018 stock award processes; he merely accepted the award without making any attempt to review its terms.

## CONCLUSION

Palfery's failure to report subsequent employment and performance of competitive duties breached the restrictive covenants described in the Non-Competition Agreements.  Further, his employment by 3Cloud while retaining the benefit of the Perficient stock awarded to him as consideration for his agreement not to compete also unjustly enriches Palfery at Perficient's expense.  Based on his breaches, Perficient is entitled to receive as damages its consideration paid for Palfery's breached agreements and all other remedies defined in the agreements, including its attorneys' fees and costs.

15995819.v1

                    SANDBERG PHOENIX & von GONTARD P.C.

By:   */s/ Benjamin R. Wesselschmidt*
       Lyndon Sommer, #44005
       Benjamin R. Wesselschmidt, #66321
       600 Washington Avenue - 15th Floor
       St. Louis, MO  63101-1313
       314-231-3332
       314-241-7604 (Fax)
       lsommer@sandbergphoenix.com
       bwesselschmidt@sandbergphoenix.com

*Attorneys for Plaintiff Perficient, Inc.*

## CERTIFICATE OF SERVICE

    I hereby certify that on November 15, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system on all counsel of record:

                    */s/ Benjamin R. Wesselschmidt*